## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | **Chapter 13** |
| | : | |
| **AMEL M. ODOM,** | : | |
| | : | **Bky. No. 15-19111 ELF** |
| Debtor. | : | |
| | : | |

| | | |
|---|---|---|
| | : | |
| **AMEL M. ODOM,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **PHILADELPHIA PARKING AUTHORITY ,** | : | **Adv. No. 16-0195** |
| | : | |
| Defendant. | : | |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this adversary proceeding, Plaintiff Amel M. Odom ("the Debtor") seeks damages under 11 U.S.C. §362(k) from the Defendant Philadelphia Parking Authority (the "PPA") for an alleged "willful" violation of the automatic stay, 11 U.S.C. §362(a).  Presently before the court are the parties' cross motions for summary judgment.[1]

The facts are not complicated. The parties agree that approximately a year and a half after the Debtor filed for bankruptcy protection, the PPA impounded the Debtor's automobile and did not return it for six (6) days.

---

[1]    Both parties styled their pleadings as motions for "partial summary judgment." (See Doc. #'s 42, 48).  The Debtor asks that summary judgment be entered with regard to "liability only" (as opposed to damages).  The PPA's Motion, however, seeks complete relief and is more accurately characterized as a motion for summary judgment, rather than partial summary judgment.

In the cross motions, the parties spar primarily on one (1) legal issue and one (1) fact question.

The primary legal issue is whether the PPA is immune from liability based upon Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. §§8541 et seq. (the "PSTCA").   The PPA posits that the PSTCA provides a complete, affirmative defense to the Debtor's claim.  However, in this bankruptcy proceeding, in which the Debtor asserts a cause of action created by the Bankruptcy Code, the statutory immunity provided by the PSTCA has no applicability.  Therefore, the PPA's motion, on this theory, must be denied.

The primary fact question is: when did the PPA receive notice of the Debtor's bankruptcy filing?  That question leads to two (2) subsidiary questions:

(1)  Did the PPA receive notice before it impounded the Debtor's car on June 11, 2016?

(2)  Did the PPA receive notice on June 11, 2016, the day after it impounded the car (but refused to release the car for an additional five (5) days); or did the PPA first receive notice of the bankruptcy filing on June 16, 2016, the day that it released the car to the Debtor (rendering the stay violation non-willful and precluding the recovery of damages under 11 U.S.C. §362(k))?

Each side believes that the facts are undisputed in its favor, justifying the entry of partial summary judgment (the Debtor) or complete summary judgment (the PPA).  However, both sides are incorrect.  Based on the present record, the central material fact (i.e., when was the PPA on notice of the Debtor's bankruptcy case?)  is in dispute, precluding summary judgment for either side.[2]

---

[2]        The parties spent a good deal of their pleadings arguing and counter-arguing about damages.  For example, the Debtor asserts that the Defendant's illegal activity caused him all kinds of damages, including actual damages, emotional distress, marital conflict, loss of consortium, damage to the car, punitive damages, and attorney's fees. See e.g. Cross Motion at 5-8; Exs. 2-5.

(continued...)

## II.  PROCEDURAL AND FACTUAL HISTORY

### A.  The Main Bankruptcy Case

On December 22, 2015, the Debtor filed a voluntary Chapter 13 bankruptcy case.  On

January 5, 2016, the Debtor filed his bankruptcy schedules.  (Bky. No. 15-19111, Doc. # 8).

The Debtor's chapter 13 plan was confirmed on August 23, 2016.  (Id., Doc. # 61).

On Schedule E/F, the Debtor listed both the City of Philadelphia ("the City") and the

Philadelphia Traffic Court[3] as creditors.[4]  Schedule E/F lists the mailing address of the City as

---

[2](...continued)

The Defendant argues that the Plaintiff's damages should be limited or denied, either because such damages are precluded by law or because the Debtor has failed to provide sufficient evidence of the damages.  See e.g. Motion at 7-8, 9-11; Exs. A, B to Motion (describing Debtor's damages); PPA's Response at 10-12.

While the question of damages will certainly be relevant and may well prove thorny at the trial stage of this matter, the issue of damages is premature because I am denying summary judgment on the issue of liability.  Therefore, I will not decide the question of damages at this time or further discuss it in this Memorandum.

[3]    The court that is commonly called the Philadelphia Traffic Court is now the Philadelphia Municipal Court, Traffic Division.  See https://www.courts.phila.gov/traffic/.  ("The Traffic Division of Municipal Court was established by Act 17 of 2013 of the Pennsylvania General Assembly, which abolished the former Philadelphia Traffic Court and transferred its jurisdiction to the Municipal Court").  I will continue to refer to the entity as the Philadelphia Traffic Court.

[4]    In the Complaint, the Debtor alleges that "Defendant [PPA] was named in the debtor's January 5, 2016 bankruptcy schedule E/F, Page 14, Section 4.7; and on Page 22, Section 4.30 of the chapter 13 bankruptcy petition."  (Complaint ¶3). The Debtor exaggerates.  The creditors named at ¶¶ 4.7 and 4.30 are the City and the Philadelphia Traffic Court, not the PPA.

P.O. Box 41818, Philadelphia, PA 19101[5] and the mailing address of the Philadelphia Traffic

Court as 800 Spring Garden Street, Philadelphia, PA 19123-2690.[6]

---

[5]      In support of its position, the PPA submitted the Affidavit of James Zukowski, the Manager of Technical Support at the Philadelphia Parking Authority.  (Ex. C to the Motion) ("Zukowski Affidavit").  In that affidavit, Zukowski stated:

> When a bankruptcy notice is sent to the "City of Philadelphia, P.O. Box 41818" address, it is received by the Parking Violations Branch ("PVB"). The PVB is a subcontractor of the PPA and is responsible for processing payments of parking tickets. . . .  The PVB then sends the bankruptcy notice to me via inter-office mail.

(Zukowski Affid. ¶¶ 7-8).

[6]      In addition to listing a creditor's address in the bankruptcy schedules, a debtor is obliged to file a "mailing matrix," which lists parties in interest (including creditors) and their mailing addresses. See Local Bankruptcy Rule 1007-2.

The addresses for the City and the Philadelphia Traffic Court on the mailing matrix in this case are not entirely consistent with the addresses on Schedule E/F.

The City's P.O. Box 41818 is not on the mailing matrix.  Instead the City is listed initially as:

> City of Phila
> School District of Phila
> Municipal Services Building
> 1401 John F Kennedy Blvd 5th Floor
> Philadelphia, PA 19101-1617

The matrix has a later notation: "The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed. R. Bank. P. 2002(g)(4)."  Following the notation, the City's mailing address is listed as:

> City of Philadelphia
> City of Philadelphia Law Dept.
> Tax Unit/Bankruptcy Dept
> 1515 Arch Street 15th Floor
> Philadelphia, PA 19102-1595.

Presumably, notices in the case sent by the court through the Bankruptcy Noticing Center ("the BNC")

(continued...)

-4-

On January 22, 2016, the court served parties in interest with the Notice of Chapter 13

Bankruptcy Case (Official Form 309I) and filed a Certificate of Mailing. (See Bky. No. 15-

19111, Doc. #'s 14, 16).[7]

On April 13, 2016, the Debtor's counsel filed a Notice of Continued Section 341(a)

Meeting of Creditors, advising parties of the rescheduling of the §341 meeting of creditors.  This

notice was accompanied by a Certification of Service, in which counsel certified that the Notice

was served by first class mail on April 13, 2016 on, inter alia, the City at P.O. Box 41818,

Philadelphia, PA 19101 and the Philadelphia Traffic Court at 800 Spring Garden Street,

Philadelphia, PA 19123-2690.  (Id., Doc. # 27).[8]


### B.  The Adversary Proceeding

On June 16, 2016, the Debtor filed the Complaint, initiating this adversary proceeding.  In

---

[6](...continued)
were sent to the City at that last address.

As for the Philadelphia Traffic Court, the matrix lists the address as:

> Philadelphia Municipal Court
> Traffic Division
> 800 Spring Garden Street
> Philadelphia, PA 19123-2616.


[7]     Perhaps because it is a bit difficult to read and interpret, the BNC's Certificate of
Mailing, neither party relies upon or refers to it in their summary judgment submissions, so neither will I.


[8]     In light of the fact that the address in Schedule E/F apparently was not carried over to the
mailing matrix, see n.5, supra, and, even if it was, the BNC may have redirected notice to a different
address, see id., Debtor's counsel's April 13, 2016 notice may have been the first notice received by the
PPA of the Debtor's bankruptcy filing.  See n.4, supra (mailings to the City P.O. Box 41818 are delivered
to the PPA).  But see Part VI.A., infra, (through Zukowski Affidavit, PPA denies receipt of Debtor's
counsel's April 13, 2016  Notice of Continued Section 341(a) Meeting of Creditors)

the Complaint, the Debtor asserts that the PPA willfully violated the automatic stay by impounding and refusing to release the Car.  The Debtor requests compensatory damages, punitive damages, as well as attorney's fees and costs.

The PPA filed an Answer to the Complaint on July 18, 2016 and an Amended Answer on September 2, 2016. (Doc. #'s 4, 11).

The PPA filed a Motion for Summary Judgment on January 13, 2017 ("the Motion") (Doc. # 42).  On January 27, 2017, the Debtor filed a Cross Motion for Summary Judgment ("the Cross Motion") (Doc. # 48).  The same day, the Debtor filed a response to PPA's Motion ("the Debtor's Response") (Doc. # 49). On February 17, 2017, the PPA filed a response to the Cross Motion ("the PPA's Response") (Doc. # 58). The Debtor filed a supplemental response to the PPA's Motion on February 20, 2017 ("the Debtor's Supplemental Response") (Doc. # 59).

### C. Undisputed Facts

The Debtor owns a 2007 Audi Q7 ("the Car").  The PPA acknowledges that

- the Debtor was in a bankruptcy as of December 22, 2015;

- the PPA impounded the Car on June 10, 2016, while the Debtor was still in a bankruptcy;[9]

---

[9]    Both parties seem to assume that the PPA took this action based on unpaid prepetition parking tickets.  Strictly speaking, there is nothing in the summary judgment record establishing this fact.  In any event, whether the PPA's action derived from a prepetition or postpetition liability does not appear to affect the viability of the Debtor's 11 U.S.C. §362(k) claim.  The impoundment occurred before the Debtor's chapter 13 plan was confirmed.  Consequently, the Car was property of the estate which had not revested in the Debtor pursuant to 11 U.S.C. §1327(b).  Thus, 11 U.S.C. §362(a)(3) would seem to have been in force on June 10, 2016.

- on June 16, 2016, the PPA received oral notice of the Debtor's bankruptcy filing; and

- on June 16, 2016, after receiving that oral notice, the PPA released the Car to the Debtor.

PPA's Response at 4.


### III.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), applicable in this adversary proceeding through Fed. R. Bankr. P. 7056, summary judgment must be granted to a moving party when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  E.g., Tri-M Group, LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011); In re Bath, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010). See also In re Asbestos Prods. Liab. Litig. (No. VI), 2016 WL 4750507, at *3 (3d Cir. Sept. 13, 2016).

On a motion for summary judgment, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248.

The parties' respective burdens of proof also play a role in determining the merits of a summary judgment motion. See In re Polichuk, 506 B.R. 405, 421 (Bankr. E.D. Pa. 2014).

If the movant is the defendant or the party without the burden of proof, the movant must demonstrate the absence of a genuine issue of material fact, but the movant is not required to

support the motion with affidavits or other materials that negate the opponent's claim.  Rather,

the movant may assert that the party with the burden of proof has not come forward with

evidence to support one or more elements of its claim.  See Celotex Corp. v. Catrett, 477 U.S.

317, 323-34 (1986).

On the other hand, if the movant is the party with the burden of proof at trial, the standard

is more stringent.  The movant "must produce enough evidence to justify a directed verdict in its

favor in order to meet its initial burden."  Nat'l State Bank v. Fed. Reserve Bank of New York,

979 F.2d 1579, 1582 n.2 (3d Cir. 1992); see also In re Newman, 304 B.R. 188, 193 (Bankr. E.D.

Pa. 2002).

## IV.  THE LEGAL STANDARD AND REMEDY
## FOR A WILLFUL VIOLATION OF THE AUTOMATIC STAY

It is well known that the automatic stay is designed to stop pending debt collection

activity and litigation and is considered one of the fundamental protections afforded by the

Bankruptcy Code. E.g., In re Billings, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016) (citing H & H

Beverage Distributors v. Dep't of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988)),

aff'd, 2017 WL 1488657 (3d Cir. Apr. 26, 2017) (nonprecedential).

The automatic stay, imposed by 11 U.S.C. §362(a), prohibits, inter alia, "any act to

collect  .  .  .  or recover a claim against the debtor that arose before the commencement of the

case," 11 U.S.C. §362(a)(6) and "any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate," 11 U.S.C. §362(a)(3).

A willful violation of the automatic stay gives rise to a claim for damages, as set forth in

11 U.S.C. §362(k):

(1) Except as provided in paragraph (2), an individual injured by any <u>willful violation</u> of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. §362(k) (emphasis added).

The Third Circuit recently summarized the well established standard for the concept of a "willful" violation of the automatic stay:

It is a willful violation of the automatic stay when a creditor violates the stay with the **knowledge that the bankruptcy petition has been filed. Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional** . . . . [A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness. . . ."

<u>In re Lansaw</u> , 853 F.3d 657, 664 n.4 (3d Cir. 2017) (emphasis added) (<u>quoting In re Landsdale Family Rests., Inc</u>, 977 F.2d 826, 829 (3d Cir. 1992)); <u>see also</u> <u>In re Atlantic Business & Community Corp.</u>, 901 F.2d 325, 329 (3d Cir. 1990) ("the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional") (citations omitted).

Knowledge of the existence of the bankruptcy case is "treated as knowledge of the automatic stay." <u>E.g.</u>, <u>In re Theokary</u>, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011) (collecting cases).

In this case, there is no dispute that the PPA took the Debtor's Car postpetition and that the PPA's act was intentional. The only question is whether the PPA had knowledge of the bankruptcy when it took the Debtor's property.

## V. THE PPA'S IMMUNITY DEFENSE

### A.  The Supremacy Clause Overrides the PSTCA

The PPA asserts that, as a government agency, it is entitled to immunity from the

Debtor's claim for damages under 11 U.S.C. §362(k) and therefore, it is entitled to summary

judgment.  This argument is without merit.

### 1.

In evaluating an immunity defense, the starting point is to determine the source of the

asserted immunity.  In this case, to understand fully the contours of the immunity issue presented,

it is helpful to start with the type of immunity that is **not** at issue.

The PPA does not assert immunity based on the Eleventh Amendment to the U.S.

Constitution.  The Eleventh Amendment applies to actions brought by a citizen against a **state** or

state instrumentality.

The Eleventh Amendment provides no defense to the PPA for two (2) independent

reasons.

First, The PPA admits that it is a local agency, not a state agency or instrumentality.

(PPA's Motion at 6).  Consequently, Eleventh Amendment immunity is not applicable here.[10]

Second, and equally significant, any potential Eleventh Amendment immunity has been

waived and imposes no obstacle to the bankruptcy court's adjudication of this proceeding for

---

[10]      See 2 Collier on Bankruptcy ¶106.02[3], at 106-13 (Alan N. Resnick, Henry J. Sommer
eds., 16th ed. 2011); Northern Ins. Co. of New York v, Chatham County Ga., 547 U.S. 189 (2006); Mt.
Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); In re Trina Dee, Inc., 18 B.R.
330, 333 (Bankr. E.D. Pa. 1982) ("Sovereign immunity is only available to a state and its
instrumentalities").

damages under 11 U.S.C. §362(k).

In Central Virginia Community College v. Katz, 546 U.S. 356 (2006), the Supreme Court held that the "States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" Id. at 377.[11]  As a result, bankruptcy in rem jurisdiction extends against a state in all matters arising in bankruptcy cases that are "necessary to effectuate the in rem jurisdiction of the bankruptcy courts." Id. at 378.  The exercise of this bankruptcy jurisdiction is not dependent upon 11 U.S.C. §106 or any Congressional action.

In Katz, the Supreme Court identified three (3) "[c]ritical features" of the bankruptcy court's in rem jurisdiction:

> the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.

546 U.S. at 363-64.

A proceeding involving the enforcement of the automatic stay constitutes a "critical feature" in the exercise of in rem bankruptcy jurisdiction in that it facilitates the exercise of the court's exclusive jurisdiction over the debtor's property.  As the Eleventh Circuit has explained:

> Ordinarily, an adversary action arising out of a creditor's violations of the automatic stay forces the creditor to honor the automatic stay and thereby assists the bankruptcy court in carrying out its in rem functions. That holds true even where the action takes the form of a motion seeking contempt and sanctions. Although these kinds of actions 'may resemble money damage lawsuits in form, it is their function that is critical, and their function is to facilitate the in rem proceedings that form the foundation of bankruptcy.' (italics in original).

---

[11]     This legal theory often referred to as "consent by ratification" (of the U.S. Constitution).

In re Diaz, 647 F.3d 1073, 1085 (11th Cir. 2011);[12] accord In re Schroeder, 2009 WL 3526504, at

*4 (Bankr. D. Neb. Oct. 23, 2009) (under Katz, "damages for violating the automatic stay are

within the scope of the [bankruptcy] court's authority over the states").


2.

In its submissions, the PPA muddles the immunity issue by discussing 11 U.S.C. §106(a)

at some length.  Section 106(a) purports to be a **Congressional** waiver of Eleventh Amendment

immunity (an immunity which the Katz court held was waived through the ratification of the

Constitution and not dependent on Congressional action).

Section 106(a) states, in relevant part,

> [n]otwithstanding an assertion of sovereign immunity, sovereign immunity is
> abrogated as to a governmental unit to the extent set forth in this section with
> respect to [inter alia. §362].

The PPA points out, accurately, that in In re Sacred Heart Hosp. of Norristown, 133 F.3d

237, 245 (3d Cir. 1998), the Third Circuit held that a prior version of §106(a) was

unconstitutional insofar as it purported to be a Congressional abrogation of the states' Eleventh

Amendment immunity.  See also In re Philadelphia Entm't & Dev. Partners, L.P., 549 B.R. 103,

---

[12]      In Diaz, the court concluded that the case before it presented the "rare exception" to the
general rule enunciated.  647 F.3d at 1086.  That was because the debtor in Diaz was dilatory in seeking
to enforce the stay.  By the time the debtor initiated the proceeding, more than four (4) years after the
asserted stay violation, the discharge had been entered.  As a result, "the automatic stay had already
accomplished its purposes of preserving assets of the estate . . . and it was no longer necessary . . . to
assist the bankruptcy court in exercising its ***in rem*** jurisdiction." Id. (italics in original and emphasis
added).  As a result, based on these specific facts, the court held that the §362 enforcement action fell
outside the class of proceedings necessary to effectuate the ***in rem*** jurisdiction of the bankruptcy court.
Id.

      There is nothing factually analogous in this proceeding that would bring it within the
exception to the general rule described in Diaz.

121 (Bankr. E.D. Pa. 2016) ("consistent with the Third Circuit's opinion in *Sacred Heart*, to find

that § 106(a) of the Bankruptcy Code may not be relied upon by the Trustee to defeat the

Commonwealth Parties' assertion of sovereign immunity").  The PPA then argues that §106(a)

does not interfere with the immunity provided by the PSTCA.

For the reasons explained in Part V.A.1, supra, the PPA's §106(a) argument is unavailing.

It is based on the false premise that §106(a) impacts its claimed entitlement to immunity.  After

Katz, both Sacred Heart and §106(a) essentially are irrelevant in the analysis of waiver of state

sovereign immunity.  In any event, as previously explained in the previous section of this

Memorandum: (1) as a local agency, the PPA cannot invoke state sovereign immunity; and (2)

even if the PPA were a state instrumentality, under Katz, it could not invoke sovereign immunity

as a defense to an action under 11 U.S.C. §362(k).

### 3.

At bottom, the PPA's defense is based on the insupportable proposition that a state

statute, the PSTCA, immunizes it from liability for the violation of a federal statute, the

Bankruptcy Code.[13]  This argument fails for the simple reason that the Supremacy Clause of the

U.S. Constitution, precludes state law (such as the PSTCA) from overriding federal law.[14]  The

---

[13]        The PSTCA provides, in relevant part, that "no local agency shall be liable for any
damages on account of any injury to a person or property caused by any act of the local agency or an
employee thereof or any other person." 42 Pa. C.S. §8541. Certain exceptions to the statutory immunity
provided by §8541 are set forth in 42 Pa. C. S. §8542.   None is relevant in this proceeding.  The
exceptions are set forth in the Appendix to this Memorandum.

[14]        The Supremacy Clause provides, in relevant portion:

(continued...)

constitutional supremacy principle is fully applicable to the Bankruptcy Code: the

Commonwealth of Pennsylvania, by statute, cannot immunize its citizens (or a local agency)

from liability for violation of the provisions of the federal Bankruptcy Code.[15]


### B.  The PPA Is Entitled to Partial Relief Under 11 U.S.C. §106(a)

The PPA invokes 11 U.S.C. §106 in support of two (2) other legal arguments:

(1) it is totally immune from liability under 11 U.S.C. §106(a)(4) and

(2) it is at least partially immune under 11 U.S.C. §106(a)(3).

The first argument is without merit.  The second argument has merit.

---

[14](...continued)
> [t]his Constitution, and the Laws of the United States which shall be made in
> Pursuance thereof; and all Treaties made, or which shall be made, under the
> Authority of the United States, shall be the supreme Law of the Land; and the
> Judges in every State shall be bound thereby, any Thing in the Constitution or
> Laws of any State to the Contrary notwithstanding."

U.S. Const. art. VI., cl.2.


[15]      See e.g. Jones v. Keene Corp., 933 F.2d 209, 214 (3d Cir. 1991) ("If a provision of the
[bankruptcy] Plan, a creature of federal law, conflicts with the law of a state and the state law 'frustrates
the full effectiveness of federal law the state law is rendered invalid by the Supremacy Clause.'")
(quoting Perez v. Campbell, 402 U.S. 637, 652 (1971)); In re Midway Airlines, Inc., 175 B.R. 239, 243
(Bankr. N.D. Ill. 1994) ("[a]ny state common or other law to the contrary must defer to the relevant
provisions of the Bankruptcy Code . . . pursuant to the Supremacy Clause of the United States
Constitution"); In re Woodings-Verona Tool Works, Inc., 157 B.R. 575, 577 n.4 (Bankr. W.D. Pa. 1993)
(noting the same); see generally Buskirk v. Seiple, 560 F. Supp. 247, 250 (E.D. Pa. 1983) ("state law may
not 'frustrate or interfere with the implementation of national policies.'") (quoting Knoll v. Springford
Township School Dist., 699 F.2d 137, 141 (3d Cir. 1983)) (further citations omitted).

-14-

**1.**

11 U.S.C. §106(a)(4) provides:

> The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

The PPA argues that the "appropriate nonbankruptcy law" referenced in §106(a)(4) is the PSTCA, that the only basis for imposing liability under the PSTCA is under 42 Pa. C.S. §8542. In effect, the PPA argues that 11 U.S.C. §106(a)(4) incorporates and validates all state immunity law for governmental units. Respectfully, I disagree.

Perhaps surprisingly, there is little case law construing 11 U.S.C. §106(a)(4). Most of the reported decisions involve the second clause of the provision, which involves proceedings against the United States and issues that are not germane in this proceeding against a municipal local agency. See, e.g., In re Benson, 566 B.R. 800, 805 (Bankr. W.D. Va. 2017); In re Brown, 211 B.R. 1020, 1023 (Bankr. S.D. Ga. 1997).

The reported decisions that refer to the first clause in §106(a)(4) do so in general terms, describing the provision as one that allows the bankruptcy court to enforce its orders, but do not explain the meaning of the additional phrase that requires that such enforcement be "consistent with appropriate nonbankruptcy law." See, e.g., In re Kight, 460 B.R. 555, 565 (Bankr. M.D. Fla. 2011); In re Harchar, 2006 WL 3196846, at *3 (Bankr. N.D. Ohio Oct. 4, 2006). Nevertheless, even without the benefit of case precedent, it is clear that the first clause of §106(a)(4) does not support the PPA's immunity defense under the PSTCA.

The meaning of §106(a)(4) may be gleaned from two (2) sources.

-15-

The first source is the text and structure of §106 itself.  The plain language of §106(a)(4) refers to the "enforcement" of an order entered pursuant to one (1) of the Code sections referenced in §106(a).  One of those Code sections is §362(k), which authorizes an award of damages against an entity that has wilfully violated the automatic stay.  The use of the word "enforcement" connotes that there already has been some type of order entered against a party.  If, as the PPA suggests, it is immune, that immunity would have precluded the entry of any monetary award to be "enforced."  This indicates that the phrase the PPA relies upon, and the incorporation of nonbankruptcy law, refers to proceedings arising after the entry of a damages award under §362(k).

This reading of §106(a) is reinforced by the internal structure of the provision.  Subdivision (a) purports to "abrogate" sovereign immunity with respect to various Code provisions.  It would make no sense for Congress to take that action in subdivision (a) only to incorporate all nonbankruptcy immunity law in subdivision (c).

Second, in case there is any doubt about the textual analysis set out above, the legislative history explains exactly what Congress meant:

> Section 106(a)(4) permits an order, process, or judgment to be enforced against a governmental unit in accordance with appropriate nonbankruptcy law. Thus, **an order against a governmental unit** will not be enforceable by attachment or seizure of government assets, but **will be subject to collection in the same manner and subject to the same nonbankruptcy law procedures as other judgments that are enforceable against governmental units**.

140 Cong. Rec. H10752-01, H10766, 1994 WL 545773 (Oct. 4, 1994) (emphasis added).

Section 106(a)(4) instructs that if the Debtor succeeds in obtaining a monetary recovery against the PPA and the PPA fails to satisfy the award, the Debtor must invoke the procedures available under nonbankruptcy law to collect the award.  The provision does not incorporate state

immunity law.

## 2.

In the prayer for relief to Count I of the Complaint, the Debtor requests an award of punitive damages. The PPA invokes 11 U.S.C. §106(a)(3) for the limited purpose of defeating any claim for punitive damages.  The PPA is entitled to this relief.

11 U.S.C. §106(a)(3) provides

> The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, **but not including an award of punitive damages**. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.  (emphasis added)

The first sentence of §106(a)(3) plainly authorizes a monetary recovery against a governmental unit under the Code provisions listed in subsection (a)  – which includes §362 – but precludes the award of punitive damages.  I join those courts which have applied the plain language of §106(a)(3) to eliminate requests for punitive damages against governmental units when based on relief granted under a Code provision cited by §106(a).  See In re Hardy, 97 F.3d 1384 (11th Cir. 1996); In re Steinke, 2013 WL 5476064, at *3 (Bankr. D. Colo. June 12, 2013); Rosas v. Monroe Cty. Tax Claim Bureau, 323 B.R. 893, 902 (Bankr. M.D. Pa. 2004); In re Sculky, 182 B.R. 706, 708 (Bankr. E.D. Pa. 1995).  But see In re NCVAMD, Inc., 2013 WL 6860816 (Bankr. E.D.N.C. Dec. 31, 2013).[16]

---

[16]    In NCVAMD, the court awarded punitive damages against a state agency for violation of the automatic stay.  The court reasoned that, in light of the consent by ratification theory accepted by the Supreme Court in Katz, a bankruptcy court may award punitive damages, notwithstanding §106(a)(3),

(continued...)

## VI.  SUMMARY JUDGMENT CANNOT BE GRANTED
## DUE TO A DISPUTED ISSUE OF MATERIAL FACT.

The PPA lacks a complete immunity defense to the Complaint.  Therefore, it is necessary to decide if the record permits a determination on the merits: whether the PPA wilfully violated the automatic stay.

There is no dispute that the PPA took the Debtor's Car postpetition and that the PPA's act to impound the Car was intentional. The only question in determining whether a willful violation of the stay took place is whether the creditor had knowledge of the bankruptcy when it took the Debtor's property.

### A. The Parties' Arguments

***The Debtor***

The Debtor asserts, as an undisputed fact, that the Defendant had knowledge of the bankruptcy prior to taking his Car.  According to the Debtor, the PPA was informed of the

---

[16](...continued)
"when doing so is necessary to effectuate the court's ***in rem*** jurisdiction."  2013 WL 6860916 at *2. Respectfully, I disagree.

While Congressional action through §106(a)(3) may be unnecessary in order to override the general immunity afforded by the Eleventh Amendment and for the imposition of monetary liability on the states for violations of the Bankruptcy Code, leaving Congress free to create a cause of action against the states for violation of a provision of the Bankruptcy Code, Congress nonetheless has the statutory power to limit the scope of the monetary remedy afforded to an aggrieved party.  Here, while Congress could have granted parties the full panoply of remedies afforded by §362(k), the language of §106(a)(3) evinces Congress' intent to limit the scope of the remedy against a governmental unit. Considering the fundamental principle of comity that pervades our federal system, this Congressional choice is not surprising.

In short, in my view <u>NCVAMD</u> conflates the issues of jurisdiction immunity with statutory authority and the scope of the remedy provided by Congress for stay violations committed by governmental units.

Debtor's bankruptcy in the following ways:

1. The PPA received written notice on or about April 13, 2016, when the Debtor's counsel served notice of the continuance of the Debtor's §341 meeting.[17]

2. On four (4) separate occasions after the PPA impounded the Car, i.e., on June 11, 12, 13 and 14, 2016, the Debtor verbally informed the PPA of his bankruptcy filing in an effort to regain possession of the Car.[18]

3. The Debtor's counsel called the PPA on June 13, 2016 and informed it that the Debtor had filed a Chapter 13 petition. Complaint ¶9.[19]

### The PPA

The PPA admits that the automatic stay was in place when it seized the Debtor's Car, but denies that it had notice or knowledge of the Debtor's bankruptcy. As a result, the PPA characterizes the stay violation as unintentional and not willful. The PPA further denies that the Debtor or his counsel verbally provided notice of his bankruptcy to one of its representatives. In fact, the PPA asserts that it did not receive any notice of the Debtor's bankruptcy prior to the date it released the Car, June 16, 2016.

The PPA supports its position with the Zukowski Affidavit. See n.4, supra.

According to the Zukowski Affidavit:

The first time [Zukowski] performed a search of the records of [the Debtor] . . . was on June 16, 2016. Prior to that, no inter-office mail had been delivered to me relating to his bankruptcy case, nor had [Zulowski] received any notice of any bankruptcy action relating to [the Debtor] in any other way.

---

[17]     See Certification of Service (Bky. No. 15-19111, Doc. # 27).

[18]     Debtor's Unsworn Declaration (Ex. 2 to the Cross Motion) ("Debtor's Declaration"). The Debtor also avers that on June 13, 2016, he provided his "bankruptcy documents" to the Traffic Court and was told that he must pay $575.00 to recover the Car. (Id.; accord, Traffic Court Order dated June 14, 2016, Ex. D to Complaint).

[19]     See Debtor's Declaration.

(Zukowski Affidavit ¶15).

Further in the Affidavit, Zukowski attests that:

> In my ten-plus years of experience working for the PPA as Manager of Technical Support, and in my sixteen-plus years of experience with the PPA overall, I am not aware of any other times when the PPA has missed the notice of a debtor's bankruptcy and all subsequent notices.

(Id. ¶21).

The PPA further argues that even if the Debtor sent notice of the bankruptcy, this fact alone is not enough to conclude that the Defendant actually received the notice.  See Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 319-21 (3d Cir. 2014) (holding that "evidence sufficient to nullify the presumption of receipt under the "mailbox rule" may consist solely of the addressee's positive denial of receipt, creating an issue of fact for the jury").

## B.  This Evidentiary Conflict Rises to the Level of a Material Factual Dispute

The question of when the PPA received notice of the Debtor's filing is **the** central factual question in this proceeding. If the PPA received notice on or before June 10, 2016, then it had knowledge of the bankruptcy before it impounded the Car and willfully violated the automatic stay.  If the PPA received notice of the bankruptcy case after it had already impounded the Car, but continued to retain the car for several days, that too, could constitute a willful violation of the automatic stay.[20]  But if the PPA did not receive notice of the bankruptcy case until June 16, 2016

---

[20]        See, e.g., In re Docherty, 2016 WL 675835, at *6 (N.D. Ohio Feb. 18, 2016) (finding a willful violation of the stay when a creditor did not return a vehicle to the debtor after receiving notice of the filing and noting that "[o]nce the creditor learns that a bankruptcy petition has been filed, the creditor has an affirmative duty to return the property to the debtor and to restore the status quo") (citing In re Smith, 876 F.2d 524, 526 (6th Cir. 1989)); In re Carrigg, 216 B.R. 303, 305 (1st Cir. BAP 1998) ("the
(continued...)

(the day it released the Car), then the PPA lacked knowledge of the stay when it took possession

of the Car; it did not retain possession of the Car with knowledge of the bankruptcy and did not

willfully violate the stay.

The Debtor and the PPA both have submitted evidence by way of declaration and

affidavit that support their respective versions of the events.  This evidence is in conflict; indeed,

the statements submitted by the opposing parties may be irreconcilable.  In order to resolve the

dispute and make findings as to what occurred, an evidentiary hearing is necessary, at which

time, I can determine the strength and credibility of each side's evidence.

In these circumstances, neither side can meet its burden at the summary judgment stage of

demonstrating that there are no disputed issues of material fact, thus precluding the entry of

summary judgment.

---

[20](...continued)
creditor's refusal to voluntarily turn over property of the estate to the debtor after it had notice of the
bankruptcy constitutes . . .  willful violation of the stay") (citation omitted);  In re Brooks, 207 B.R. 738
(Bankr. N.D. Fl. 1997) (creditor willfully violated automatic stay when it did not return vehicle –
repossessed prepetition – upon receiving notice of the stay); see also 3 Collier on Bankruptcy ¶ 362.12
(Alan N. Resnick, Henry J. Sommer eds., 16th ed. Lexis/Nexis 2017) (" Failure to undo a technical
violation may elevate the violation to a willful one").

## VII.  CONCLUSION

For the reasons discussed, both summary judgment motions will be denied in large part.

The PPA's Motion will be granted in part, but only insofar as it seeks a determination that the

Debtor is not entitled to an award of punitive damages.

An order consistent with this Memorandum will be entered.

Date:  **August 10, 2017**

_____

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

# A P P E N D I X

42 Pa. C.S. §8542 provides:

(b) Acts which may impose liability- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) *Vehicle liability*.--The operation of any motor vehicle in the possession or control of the local agency, provided that the local agency shall not be liable to any plaintiff that claims liability under this subsection if the plaintiff was, during the course of the alleged negligence, in flight or fleeing apprehension or resisting arrest by a police officer or knowingly aided a group, one or more of whose members were in flight or fleeing apprehension or resisting arrest by a police officer. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

(2) *Care, custody or control of personal property*.--The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

(3) *Real property*.--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:(I) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;(iii) streets; or(iv) sidewalks.

(4) *Trees, traffic controls and street lighting*.--A dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

(5) *Utility service facilities*.--A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

(6) *Streets*.--(I) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.(ii) A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies, if all of the following conditions are met:(A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:(I) had not expired or been otherwise terminated prior to the occurrence of the injury; or(II) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

(7) *Sidewalks*.--A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

(8) *Care, custody or control of animals*.--The care, custody or control of animals in the possession or control of a local agency, including but not limited to police dogs and horses. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.